**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| Mark Lincoln, *et al*.,<br><br>Plaintiffs,<br><br>v.<br><br>Ford Motor Company, *et al*.,<br><br>Defendants. | )<br>)<br>)    Civil Action No. 1:19-cv-02741-JKB<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT FORD MOTOR
COMPANY'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS
ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(2) AND 12(b)(6)**

# **TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................................1

FACTS ALLEGED IN THE COMPLAINT ......................................................................3

LEGAL STANDARD..........................................................................................................5

ARGUMENT .......................................................................................................................6

I.      All Claims Asserted by Buege Should Be Dismissed for Lack of Personal
        Jurisdiction................................................................................................................6

        A.      Ford is not subject to general jurisdiction in Maryland. ............................6

        B.      The Court also lacks specific jurisdiction as to Buege's claims...............8

II.     Lincoln's Claims under Delaware's Consumer Fraud Act and Maryland's
        Consumer Protection Act Fail as a Matter of Law ..................................................9

III.    Plaintiffs' MCPA, DCFA, NMUTPA, and Fraudulent Concealment Claims Fail to
        Meet Fed. R. Civ. P. 9(b) and/or 8(a) Because They Do Not Adequately Plead
        Actionable Representations, Advertising, or Omissions .......................................11

        A.      Plaintiffs Fail to Plead Viable Claims under the MCPA, DCFA, or
                NMUTPA Based on Affirmative Representations or Advertising .......................11

        B.      Plaintiffs Do Not Plausibly Allege the Existence of the "Steering Defect" in
                Their Vehicles and Fail to Provide Fair Notice to Ford Regarding a Material
                Omission ....................................................................................................13

IV.     The Economic Loss Doctrine Bars Lincoln's Common Law Fraudulent
        Concealment Claim under Delaware Law ..............................................................17

V.      Lincoln's Claim for Breach of Good Faith and Fair Dealing under Delaware Law
        and Buege's Claim under New Mexico Law Fail..................................................18

VI.     Plaintiffs' Breach of Express Warranty Claims Fail.............................................20

        A.      Breach of Warranty-by-Representation Claim Fails...............................20

        B.      Lincoln's Claim for Breach of NVLW Fails ...........................................22

VII.    Plaintiff's Claims for Breach of the Implied Warranty of Merchantability under
        Maryland, Delaware, and New Mexico Law are Barred Based on their Failure to
        Provide Notice within a Reasonable Time..............................................................23

VIII.   Lincoln's Derivative Claim under the Magnuson-Moss Warranty Act Fails...................26

CONCLUSION....................................................................................................................27

i

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Abraham v. Volkswagen of America, Inc.*,
   795 F.2d 238 (2d Cir. 1986)................................................................................................26

*Alvarez v. Chevron Corp.*,
   656 F.3d 925 (9th Cir. 2011) .............................................................................................25

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).............................................................................................................6

*Baltimore Scrap Corp. v. Exec. Risk Specialty Ins. Co.*,
   388 F. Supp. 3d 574 (D. Md. 2019)....................................................................................22

*Beck v. FCA US LLC*,
   273 F. Supp. 3d 735 (E.D. Mich. 2017)..............................................................................13

*Begay v. Medicus Healthcare Sols., LLC*,
   No. CV 15-500 JCH/SCY, 2015 WL 13650107 (D.N.M. Nov. 18, 2015)............................13

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................................................................6

*Bellman v. NXP Semiconductors USA, Inc.*,
   248 F. Supp. 3d 1081 (D.N.M. 2017) .................................................................................21

*BNSF Ry. v. Tyrrell*,
   137 S. Ct. 1549 (2017).....................................................................................................7, 8

*Bristol-Myers Squibb Co. v. Superior Court*,
   137 S. Ct. 1773 (2017)..............................................................................................6, 7, 8, 9

*Bros. v. Hewlett-Packard Co.*,
   No. 06-02254, 2006 WL 3093685 (N.D. Cal. Oct. 31, 2006) .................................................23

*Burton v. Chrysler Grp. LLC*,
   No. CV 12-5-LPS, 2014 WL 4253135 (D. Del. Aug. 27, 2014) ...........................................23

*Cadena v. Am. Honda Motor Co., Inc.*,
   No. 18-CV-4007-MWF(PJWx), 2019 WL 3059931 (C.D. Cal. May 29, 2019)....................23

*Cahen v. Toyota Motor Corp.*,
   147 F. Supp. 3d 955 (N.D. Cal. 2015) ..................................................................................8

*Callaghan v. BMW of N. Am., LLC*,
   No. 13-CV-04794-JD, 2014 WL 6629254 (N.D. Cal. Nov. 21, 2014)....................................17

*Carlson v. Gen. Motors Corp.*,
    883 F.2d 287 (4th Cir. 1989) ................................................26

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008) ................................................27

*Combs v. Bakker*,
    886 F.2d 673 (4th Cir. 1989) ................................................5

*Cooper v. Samsung Elecs. Am., Inc.*,
    374 F. App'x 250 (3d Cir. 2010) ................................................27

*Copiers Typewriters Calculators, Inc. v. Toshiba Corp.*,
    576 F. Supp. 312 (D. Md. 1983) ................................................21

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ................................................7, 8

*Daniyan v. Viridian Energy LLC*,
    No. CIV.A. GLR-14-2715, 2015 WL 4031752 (D. Md. June 30, 2015) ................................................15

*Darne v. Ford Motor Co.*,
    No. 13 C 03594, 2015 WL 9259455 (N.D. Ill. Dec. 18, 2015) ................................................23

*DeCoteau v. FCA US LLC*,
    No. 15-cv-00020-MCE(EFB), 2015 WL 6951296 (E.D. Cal. Nov. 10, 2015) ................................................17

*Doll v. Ford Motor Co.*,
    814 F. Supp. 2d 526 (D. Md. 2011) ................................................24

*Eagle v. Freeport-McMoran, Inc.*,
    No. 2:15-CV-00577-MV-SMV, 2016 WL 7494277 (D.N.M. May 26, 2016) ................................................20

*Eames v. Nationwide Mut. Ins. Co.*,
    412 F. Supp. 2d 431 (D. Del. 2006), *aff'd* 346 F. App'x 859 (3d Cir. 2009) ................................................12

*Erwin v. Ford Motor Co.*,
    Case No. 8:16-cv-1322, 2016 WL 7655398 (M.D. Fla. Aug. 31, 2016) ................................................9

*F.E. Myers Co. a Div. of McNeil Corp. v. Pipe Maint. Servs., Inc.*,
    599 F. Supp. 697 (D. Del. 1984) ................................................24

*Freed v. St. Jude Med., Inc.*,
    364 F. Supp. 3d 343 (D. Del. 2019) ................................................21

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011) ................................................7

*Granillo v. FCA US LLC*,
No. CV 16-153 (FLW)(DEA), 2016 WL 9405772 (D.N.J. Aug. 29, 2016)..........................27

*H & M Co. v. Tech. Heat Transfer Servs., Inc.*,
No. CIV.A. TDC-14-1518, 2015 WL 1472000 (D. Md. Mar. 30, 2015) ..............................21

*Hawkins v. i-TV Digitalis Tavkozlesizrt.*,
935 F.3d 211 (4th Cir. 2019) ...............................................................................................5

*Hebron v. Am. Isuzu Motors, Inc.*,
60 F.3d 1095 (4th Cir. 1995) ..............................................................................................25

*In re: Elk Cross Timbers Decking Mktg.*,
No. 2577, 2015 WL 6467730 (D.N.J. Oct. 26, 2015)..........................................................25

*Johnson v. ACE Cash Express, Inc.*,
No. CV 13-1186-LPS, 2014 WL 3721947 (D. Del. July 24, 2014) ...................................3, 19

*Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.*,
844 F. Supp. 2d 519 (D. Del. 2012).....................................................................................18

*Labram v. Havel*,
43 F.3d 918 (4th Cir.1995) ...................................................................................................6

*Lloyd v. Gen. Motors Corp.*,
575 F. Supp. 2d 714 (D. Md. 2008).....................................................................................24

*Ontario Hydro v. Zallea Sys., Inc.*,
569 F. Supp. 1261 (D. Del. 1983)........................................................................................20

*Pack v. Thor Motor Coach*,
No. CV 19-503, 2019 WL 1755717 (E.D. Pa. Apr. 19, 2019) ..............................................27

*Plumhoff v. Cent. Mortg. Co.*,
286 F. Supp. 3d 699 (D. Md. 2017) .....................................................................................14

*Reklam v. Bellator Sport Worldwide LLC*,
No. CV 16-285-JFB-SRF, 2017 WL 5172397 (D. Del. Nov. 8, 2017) ...................................20

*Revene v. Charles County Comm'rs*,
882 F.2d 870 (4th Cir.1989) .................................................................................................6

*Robbins v. Oklahoma*,
519 F.3d 1242 (10th Cir. 2008) ............................................................................................6

*Romero v. Hartford Cas. Ins. Co.*,
No. 1:16-CV-1335-RB-LF, 2017 WL 8220447 (D.N.M. Aug. 3, 2017)................................12

*Sims v. Kia Motors Am., Inc.*,
No. SACV131791AGDFMX, 2014 WL 12558249 (C.D. Cal. Mar. 31, 2014) .....................13

*Spaulding v. Wells Fargo Bank, N.A.*,
714 F.3d 769 (4th Cir. 2013) ................................................................................................12

*Stanley v. Cent. Garden & Pet Corp.*,
891 F. Supp. 2d 757 (D. Md. 2012) ......................................................................................21

*Sullivan v. Ford Motor Co.*,
No. 16-cv-03505-JST, 2016 WL 6520174 (N.D. Cal. Nov. 3, 2016) .......................................8

*Theis v. Viewsonic Corp.*,
No. CIV.A. 12-1569-RGA, 2013 WL 1632677 (D. Del. Apr. 16, 2013) ........................24, 26

*United Black Firefighters v. Hirst*,
604 F.2d 844 (4th Cir. 1979) ..................................................................................................6

*Vilar v. Equifax Info. Servs., LLC*,
No. CIV 14-0226 JB/KBM, 2014 WL 7474082 (D.N.M. Dec. 17, 2014) .............................15

*Walsh v. Ford Motor Co.*,
807 F.2d 1000 (D.C. Cir. 1986) ............................................................................................26

*Willis v. Smith*,
No. 16 CV 167 JAP/LF, 2016 WL 9281447 (D.N.M. Dec. 14, 2016) ...................................24

*Wilmington Sav. Fund Soc'y, FSB v. PHL Variable Ins. Co.*,
No. CV 13-499-RGA, 2014 WL 1389974 (D. Del. Apr. 9, 2014) .........................................19

*Zieger v. Advance Am.*,
No. CV 13-1614-GMS, 2014 WL 7388365 (D. Del. Dec. 29, 2014) .....................................12

**STATE: CASES**

*Adams v. Gelman*,
No. N15C–06–030, 2016 WL 373738 (Del. Super. Ct. Jan. 28, 2016), *aff'd*,
151 A.3d 449 (Del. 2016) .....................................................................................................10

*Badilla v. Wal-Mart Stores E., Inc.*,
389 P.3d 1050 (N.M. Ct. App. 2016).....................................................................................26

*Beyond Sys., Inc. v. Realtime Gaming Holding Co., LLC*,
878 A.2d 567 (Md. 2005) ........................................................................................................8

*Charlotte Broad., LLC v. Davis Broad. of Atlanta, L.L.C.*,
No. N13C–04–143, 2015 WL 3863245 (Del. Super. Ct. June 10, 2015), *aff'd*,
134 A.3d 759 (Del. 2016) .....................................................................................................18

*Cont'l Potash, Inc. v. Freeport-McMoran, Inc.*,
  858 P.2d 66 (N.M. 1993) .................................................19

*CSR, Ltd. v. Taylor*,
  983 A.2d 492 (Md. 2009) ..................................................8

*Dave Greytak Enters., Inc. v. Mazda Motors of Am., Inc.*,
  622 A.2d 14 (Del. Ch. 1992)............................................19

*Fegeas v. Sherrill*,
  147 A.2d 223 (Md. 1958) ................................................15

*Firestone Tire & Rubber Co. v. Cannon*,
  452 A.2d 192 (Md. Ct. Spec. App. 1982), *aff'd*, 456 A.2d 930 (Md. 1983) ...................24, 25

*Ford Motor Co. v. Cejas*,
  No. 09-16-00280-CV, 2018 WL 1003791 (Tex. App. Feb. 22, 2018) .....................8

*Laing v. Volkswagen of Am., Inc.*,
  949 A.2d 26 (Md. Ct. Spec. App. 2008) ..............................26

*Lima Delta Co. v. Gulfstream Aerospace Corp.*,
  No. CV N14C-02-042 MMJ, 2019 WL 624589 (Del. Super. Ct. Feb. 13,
  2019) ........................................................................17, 18

*Lynx, Inc. v. Ordnance Prods., Inc.*,
  327 A.2d 502 (Md. Ct. App. 1974)....................................24, 25

*McLaren v. Mercedes Benz USA, LLC*,
  No. CIV.A. 04C-04-019PLA, 2006 WL 1515834 (Del. Super. Ct. Mar. 16,
  2006) ........................................................................26

*Melnick v. State Farm Mut. Auto. Ins. Co.*,
  749 P.2d 1105 (N.M. 1988) .............................................19

*Morris v. Osmose Wood Preserving*,
  667 A.2d 624 (Md. 1995) ................................................10

*Mydlach v. DaimlerChrysler Corp.*,
  875 N.E.2d 1047 (Ill. 2007) .............................................20

*NACCO Indus., Inc. v. Applica Inc.*,
  997 A.2d 1 (Del. Ch. 2009)...............................................19

*Pulte Home Corp. v. Parex, Inc.*,
  923 A.2d 971 (Md. Ct. Spec. App. 2007), *aff'd*, 942 A.2d 722 (Md. 2008) .........................22

*Sanders v. FedEx Ground Package Sys., Inc.*,
  188 P.3d 1200 (N.M. 2008) .............................................19

*Stevenson v. Louis Dreyfus Corp.*,
   811 P.2d 1308 (N.M. 1991) ....................................................................................12

*Stisser v. SP Bancorp, Inc.*,
   174 A.3d 405 (Md. 2017) .......................................................................................8

*Willis v. City of Rehoboth Beach*,
   No. CIV.A.03C-11-016-RFS, 2005 WL 1953028 (Del. Super. Ct. June 24,
   2005) ...............................................................................................................10, 26

*Woodard v. Fid. Nat. Title Ins. Co.*,
   No. CIV 06-1170 RB/WDS, 2008 WL 5737364 (D.N.M. Dec. 8, 2008) ..............18

**FEDERAL: STATUTES**

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* ........................................3, 26

**FEDERAL: RULES**

Fed. R. Civ. P. 8(a) ...................................................................................................14

Fed. R. Civ. P. 9(b) ..............................................................................................11, 12

Fed. R. Civ. P. 12(b)(2) ..............................................................................................5

Fed. R. Civ. P. 12(b)(6) ............................................................................................22

Fed. R. Civ. P. 12(c) .................................................................................................12

**STATE: STATUTES**

Cal. Comm. Code § 2607(3)(A) .................................................................................25

Del. Code Ann. Title 6, § 2-313.................................................................................21

Del. Code Ann. Title 6, § 2-607(3)(a) .......................................................................24

Del. Code Ann. Title 6, § 2511(1) .............................................................................10

Del. Code Ann. Title 6, § 2511(8) .............................................................................10

Del. Code Ann. Title 6, § 2513(a) .......................................................................10, 15

Delaware's Consumer Fraud Act, 6 Del. C. § 2511 *et seq.* ................................. passim

Maryland's Consumer Protection Act, Md. Code, Com. Law § 13-301 *et seq.* ................... passim

Md. Code Ann., Com. Law § 2–607(3)(a)...................................................................24

Md. Code Ann., Com. Law § 13-303(1), (2) ..............................................................10

Md. Code, Com. Law § 2–313(1)(a), (b) ....................................................................21

Md. Code, Com. Law § 2-313(2) ...............................................................................21

Md. Code, Com. Law § 2–314(b) ...............................................................................22

Md. Code, Com. Law §§ 13-301(1), (2)(i), (2)(iv), (5)(i), and (9)(i) ...........................12

N.M. Stat. Ann. § 55-2-313(1)(a), (b) ........................................................................21

N.M. Stat. Ann. § 55-2-313(2) ...................................................................................21

N.M. Stat. Ann. § 55-2-607(3)(a) ...............................................................................24

N.M. Stat. Ann. § 57-12-2(D) .....................................................................................12

New Mexico's Unfair Trade Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq.* ...................passim

OTHER AUTHORITIES

Restatement (Second) of Torts § 538 (1977) ................................................................15

Restatement (Second) of Torts § 550 (1977) ................................................................15

Uniform Commercial Code ............................................................................................3

U.C.C. § 2-607 cmt. 4 ..................................................................................................25

## INTRODUCTION

In Plaintiffs' First Amended Complaint ("FAC"), plaintiffs accuse Ford of fraudulently concealing or omitting material information about the steering characteristics of their F-150 pickups, but then allege facts in the FAC that conclusively establish that these fraud claims have absolutely no merit. Plaintiff Lincoln and Plaintiff Buege both describe steering characteristics in their respective vehicles that, by their own admissions, were apparent as soon as they purchased their vehicles. Given that these steering characteristics were patent and immediately detectable prior to or at the time of purchase, it strains credulity for Plaintiffs to assert Ford either fraudulently concealed or fraudulently omitted to disclose these very characteristics in violation of state consumer protection laws. It also undermines any notion that the steering characteristics that Plaintiffs allegedly find objectionable is present in all 2015-2019 model year F-150s (belying any notion this case is appropriate as a class action) or is objectionable to all other F-150 customers; otherwise, Ford's F-150 pickup would not be one of the bestselling vehicles in the United States year after year.[1]

Plaintiff Arthur Buege's claim is also procedurally infirm. Buege was newly-added as a named plaintiff in the FAC, but this Court lacks jurisdiction as to his claims which have no connection to Maryland. Buege is a New Mexico resident who purchased a 2018 F-150 in New Mexico and serviced the vehicle in New Mexico. Ford is a Delaware corporation with its principal place of business in Michigan. Buege alleges no facts to plausibly demonstrate his claims under New Mexico law arise out of or are related to Ford's contacts with Maryland. Accordingly, Ford is not subject to personal jurisdiction in Maryland for purposes of Buege's claims. There are also

---

[1]   *See*   https://www.forbes.com/sites/johnmccormick/2018/04/04/2018-ford-f-150-can-32-million-americans-be-wrong/#666181fd4737.

claim-dispositive defects with Lincoln's claims under Delaware's Consumer Fraud Act and Maryland's Consumer Protection Act. Both statutes apply only to a "sale" and as Lincoln's allegations make clear, Ford was not involved in, nor did Ford receive any consideration for, a third-party used car dealer's sale of the used 2016 F-150 to Lincoln or the trade-in of the 2016 F-150 for a 2017 F-150.

Both Plaintiffs fail to sufficiently plead any actionable misrepresentation or omission about the alleged "Steering Defect" to support their claims for consumer fraud or fraudulent concealment, among other deficiencies. Plaintiffs allege that a defect in 2015-2019 F-150 steering systems "causes the steering wheel to pull to the left or right, and/or a temporary loss of steering control." The FAC contains allegations about Plaintiffs' own experiences, four bulletins issued by Ford, and two YouTube videos they claim show the defect, but they fail to plausibly suggest the existence of a "defect." At most, these allegations demonstrate Plaintiffs' displeasure with the steering characteristic of F-150s that would have been, according to Plaintiffs, immediately apparent upon a test-drive or that some drivers, like the two drivers shown in the YouTube videos, may be experiencing an issue with the steering when they take their hands off the steering wheel. *See* FAC ¶ 49 fn.3. Unsurprisingly, when a driver takes his hands off of the steering wheel the vehicle should not be expected to continue driving itself.[2] In fact, it may pull or drift out of a center

---

[2] While some driver assist features, such as the Lane-Keeping System, are available on some vehicles, these features do require the user to keep their hands on the wheel. To the extent Plaintiffs reference these features in the FAC, there are no allegations that these features are the cause of the defect shown in the videos that Plaintiffs rely on. Indeed, it is apparent from one of the videos that the vehicle is not equipped with the Lane-Keeping System because it lacks the windshield mounted camera described in the very web link Plaintiffs cite to in their FAC in footnote 5. The other vehicle is not driven at the minimum speed level required (40 mph) to activate the Lane-Keeping System. *See, e.g.*, 2016 F-150 Owner's Manual, at p. 229, *available at* http://www.fordservicecontent.com/Ford_Content/Catalog/owner_information/2016-F150-Owner-Manual-version-3_om_EN-US_02_2017.pdf.

position due to a number of causes independent of any "defect" in the vehicle, including, crowns in the road; uneven road surfaces or grade; strong wind, rain, snow, or sleet; improper wheel alignment; low tire pressure; and tire wear (to name a few). And if a vehicle is purchased used, like the two vehicles purchased by Mark Lincoln, how the vehicle was used or maintained by the prior owner can also impact steering and steering feel.

Lincoln's claim under Delaware law and Buege's claim under New Mexico law for breach of the implied covenant of good faith and fair dealing also fail. The implied obligations Plaintiffs identify in the FAC are either obligations under law or by express agreement, rendering their claims superfluous and ultimately, defective.

Finally, Plaintiffs' express and implied-warranty claims under state and federal law are also deficient. None of the Plaintiffs allege any warranty-by-representation sufficient to state a viable claim under the Uniform Commercial Code for breach of an express warranty. Lincoln alleges no facts from which to infer he paid any amount out-of-pocket for repairs. And both Plaintiffs' implied-warranty claims fail because neither alleges he provided fair notice within a reasonable time to Ford about a purported breach of the implied warranty of merchantability. Having failed to viably plead any state-law warranty claims, Lincoln's claim under the Magnuson-Moss Warranty Act likewise fails.

For these and other reasons detailed below, all of Plaintiff's claims should be dismissed.

## FACTS ALLEGED IN THE COMPLAINT

On July 4, 2018, Mark Lincoln ("Lincoln"), a Delaware resident, purchased a used 2016 F-150 from Millsboro Auto-mart for $21,355. FAC ¶ 18. At the time of purchase, the 2016 F-150 had 17,555 miles on the odometer. *Id.* Lincoln never alleges whether he test-drove the used vehicle before he purchased it, but claims "[u]pon purchasing" the 2016 F-150, he noticed that his "truck would drift from side to side." *Id.* ¶ 19. Five days later, on July 9, 2018, Lincoln brought the 2016

F-150 to Millsboro Auto-mart who performed an alignment. *Id.* On July 25, 2018, Lincoln brought his 2016 F-150 to Millsboro Auto-mart who rebalanced his tires. *Id.* According to Lincoln, neither solved "the problem." *Id.* A technician at Millsboro contacted Pittsville Ford, located in Maryland, to service Lincoln's 2016 F-150. *Id.* ¶ 20. On July 27, 2018, Lincoln brought his 2016 F-150 to Pittsville Ford who performed an inspection but could not verify Lincoln's complaint that his vehicle was "all over the road" and jerking and pulling. *Id.* That evening, Lincoln asked Pittsville Ford (who did not sell Lincoln the 2016 F-150) and Preston Motor Group for a refund and was offered a $19,836 credit towards another vehicle purchase. *Id.* ¶ 21. On July 28, 2018, Lincoln went back to Pittsville Ford and after driving the vehicle with the manager, Lincoln was told he was "just going to have to get used to it." *Id.* ¶ 22.

Despite this, on July 28, 2018, Lincoln decided to apply the $19,836 credit, presumably from Preston Motor Group since Pittsville Ford had nothing to do with the sale of the 2016 F-150 by Millsboro, towards the purchase of a used 2017 F-150 for $22,117, which had 27,188 miles on the odometer. *Id.* ¶ 25.[3] Notwithstanding his alleged concerns with the steering in the 2016 F-150, Lincoln does not allege that he test-drove the 2017 F-150 before purchasing it. *See id.* ¶¶ 26-27. When he drove the 2017 F-150 with the sales agent following his purchase, Lincoln claims to have experienced the 2017 F-150 pulling and drifting in both directions. *Id.* ¶ 27. Pittsville Ford agreed to do a free realignment, but Lincoln claims the alignment failed to correct the issue. *Id.* Lincoln visited Pittsville Ford on October 25th and November 5th, when the vehicle was still under warranty, and Pittsville Ford adjusted the alignment, adjusted the steering gear assembly, and replaced the shaft seal. *Id.* ¶ 28. According to Lincoln, the "problems" persisted. *Id.* On September

---

[3] In the FAC, Lincoln does not allege the date he traded in the 2016 F-150 for the 2017 F-150, but in the original complaint, Lincoln alleged that he traded in his 2016 F-150 on July 28, 2018. Compl. ¶ 18.

17, 2019 (*i.e.*, the day after this action was initially commenced), Lincoln brought the 2017 F-150 to Pittsville Ford "to complain about the steering problems," but the dealer advised Lincoln it could not verify his concerns. *Id.* ¶ 29.

Arthur Buege ("Buege") is a New Mexico resident who purchased a new 2018 F-150 in Albuquerque, New Mexico on May 4, 2018. *Id.* ¶ 34. Like Lincoln, Buege does not allege he test-drove his vehicle prior to purchasing, but alleges that "[i]mmediately after purchasing" the 2018 F-150, he noticed it would drift from side to side. *Id.* ¶ 35. Buege visited Rich Ford or Power Ford, both located in Albuquerque, New Mexico, on eight occasions. *See id.* ¶¶ 35-43. With the exception of one visit to Rich Ford when the dealer diagnosed that "the driver-side upper control arm was bent" and was causing the drifting on the steering, each time Buege brought his vehicle in, the Ford dealer could not verify Buege's concern. *Id.*[4]

## LEGAL STANDARD

A challenge to a district court's exercise of personal jurisdiction arises under Fed. R. Civ. P. 12(b)(2). "When personal jurisdiction is addressed under Rule 12(b)(2) without an evidentiary hearing, the party asserting jurisdiction has the burden of establishing a prima facie case of jurisdiction." *Hawkins v. i-TV Digitalis Tavkozlesizrt.*, 935 F.3d 211, 226 (4th Cir. 2019). The burden is "on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

To survive a motion to dismiss, a complaint must allege facts setting forth a *plausible* claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atlantic Corp. v. Twombly*, 550

---

[4] For purposes of this Motion to Dismiss, Ford addresses Buege's claims under New Mexico law because Buege asserts claims under New Mexico law on behalf of himself and the purported New Mexico Class. *See* FAC, Count 3, Count 4, Count 5, and Count 7. However, if this litigation proceeds, Ford reserves the right to address whether under applicable choice-of-law principles, the laws of a different state apply to Buege's claims.

U.S. 544, 555 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (plausibility, under *Twombly*, "must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'") (quoting *Twombly*, 550 U.S. at 570). Although the Court must accept as true all material allegations, the Court need not accept unsupported legal allegations, *Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir.1989), legal conclusions couched as factual allegations, *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir.1995), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979).

## ARGUMENT

### I.   All Claims Asserted by Buege Should Be Dismissed for Lack of Personal Jurisdiction

Buege's claims should be dismissed because there is no jurisdiction in this Court to address a New Mexico resident's claims concerning a vehicle purchased and serviced in New Mexico. *See Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017). Ford, which is incorporated in Delaware and has its principal place of business in Michigan, is not subject to general jurisdiction in Maryland. Nor, as discussed below, are Buege's claims connected to Ford's in-state activity to support specific jurisdiction.

### A.   Ford is not subject to general jurisdiction in Maryland.

A court may only exercise general jurisdiction over a nonresident defendant if the defendant's "affiliations with the forum state are so 'continuous and systematic' as to render [it]

essentially at home in the forum State." *Bristol-Myers*, 137 S. Ct. at 1785. In other words, the nonresident defendant's contacts with the forum must be "so wide-ranging that they take the place of physical presence in the forum as a basis for jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 132 (2014) (explaining that "a corporation's 'continuous activity of some sort within a state is not enough" for general jurisdiction); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 920 (2011) (rejecting "stream of commerce" theory as a basis for establishing general jurisdiction). Generally, absent an exceptional circumstance that would allow a court to determine the corporation is virtually "at home" in the forum state, general jurisdiction only exists where the corporation is incorporated in the forum state or if it maintains its principal place of business in the forum state. *See BNSF Ry. v. Tyrrell,* 137 S. Ct. 1549, 1558–59 (2017) (reaffirming *Goodyear* and *Daimler* and explaining that "in-state business . . . does not suffice to permit the assertion of general jurisdiction over claims . . . that are unrelated to any activity occurring in [the forum state].").

Here, Plaintiffs allege no facts to support general jurisdiction, and in fact, only plead that this "Court has specific personal jurisdiction over" Ford. *See* FAC ¶ 15. Indeed, Ford is *not* subject to general jurisdiction in Maryland. For a corporation, "the paradigm forum for the exercise of general jurisdiction is . . . one in which the corporation is fairly regarded as at home." *Bristol-Myers*, 137 S. Ct. at 1780 (quoting *Goodyear*, 564 U.S. at 919). As Plaintiffs acknowledge, Ford is organized under the laws of the State of Delaware, with its principal place of business in Michigan. *See* FAC ¶ 45. Thus, Ford is not "at home" in Maryland based on the two paradigm examples.

Nor do Plaintiffs allege any facts to show Ford's contacts with Maryland are so "exceptional" to render it virtually "at home" in Maryland. The facts Plaintiffs plead about Ford's purported contacts with Maryland are not contacts that are unique or exceptional to Maryland. *See,*

7

*e.g.*, FAC ¶ 15, 16, 34-44. Ford is a global company whose products are sold in every state in this country. As the Supreme Court held in *BNSF*, that a "corporation that operates in many places can scarcely be deemed at home in all of them." *BNSF*, 137 S. Ct. at 1559. As other courts have held in similar circumstances where Ford's purported contacts with the forum were indistinguishable from Ford's contacts in every other state which Ford's products are sold, there is no general jurisdiction in Maryland. *See, e.g.*, *Ford Motor Co. v. Cejas*, No. 09-16-00280-CV, 2018 WL 1003791, at *10 (Tex. App. Feb. 22, 2018) (holding Ford not subject to general jurisdiction in Texas); *Sullivan v. Ford Motor Co.*, No. 16-cv-03505-JST, 2016 WL 6520174, at *7–8 (N.D. Cal. Nov. 3, 2016) (holding mere fact that Ford makes and sells vehicles in a national market is insufficient to trigger the "exceptional case" caveat); *Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 965 (N.D. Cal. 2015) (holding Ford not subject to general jurisdiction in California).

> **B.    The Court also lacks specific jurisdiction as to Buege's claims.**

Maryland construes its long-arm statute to authorize the exercise of personal jurisdiction "to the full extent allowable under the Due Process Clause." *Stisser v. SP Bancorp, Inc.*, 174 A.3d 405, 426 (Md. 2017) (quoting *CSR, Ltd. v. Taylor*, 983 A.2d 492, 501 (Md. 2009)). Accordingly, the inquiry under Maryland's long-arm statute and constitutional due process merges. *Beyond Sys., Inc. v. Realtime Gaming Holding Co., LLC*, 878 A.2d 567, 580 (Md. 2005).

For a court to exercise specific personal jurisdiction, "'the suit' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum.'" *Bristol-Myers*, 137 S. Ct. at 1780 (quoting *Daimler*, 571 U.S. at 127). Specific jurisdiction thus requires a "connection between the forum and the specific claims at issue." *Id.* at 1781. Buege lives in New Mexico, bought his F-150 in New Mexico, serviced his vehicle in New Mexico, and if he suffered any harm, he suffered it in New Mexico. FAC ¶¶ 34–44. Even if all of Plaintiffs' conclusory allegations regarding Ford's contacts in Maryland were accepted as true, specific jurisdiction over Buege's claims would still

be lacking because Buege's claims, under New Mexico law concerning a vehicle purchased and serviced in New Mexico, do not arise out of nor are they related to Ford's purported contacts in Maryland. *See, e.g.*, FAC ¶ 15, 16, 34-44. Buege therefore cannot show that Ford is subject to specific jurisdiction in Maryland for purposes of his claims. *See Erwin v. Ford Motor Co.*, Case No. 8:16-cv-1322, 2016 WL 7655398, at *7 (M.D. Fla. Aug. 31, 2016) (finding Ford's shipment of other vehicles to Florida and its advertising there did not establish jurisdiction over the plaintiff's claims because the claims did not arise out of or relate to those contacts).

Insofar as Buege will contend that the Court can exercise personal jurisdiction over his claims because Lincoln alleges analogous claims under Maryland law, as the Supreme Court explained in *Bristol-Myers*, "the mere fact that *other* plaintiffs" have alleged claims similar to those of nonresident plaintiffs "does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Bristol-Myers*, 137 S. Ct. at 1781 (emphasis in original).

Accordingly, the Court should dismiss all of Buege's claims for lack of jurisdiction.

## II. Lincoln's Claims under Delaware's Consumer Fraud Act and Maryland's Consumer Protection Act Fail as a Matter of Law

Neither Lincoln's purchase of the 2016 F-150 from a used car dealer (Millsboro), nor his trade-in of the 2016 F-150 for the 2017 F-150 with Pittsville Ford weeks later, constitute a "sale" by Ford within the meaning of either Delaware's Consumer Fraud Act, 6 Del. C. § 2511 *et seq.* ("DCFA") or Maryland's Consumer Protection Act, Md. Code, Com. Law § 13-301 *et seq.* ("MCPA"). Accordingly, his DCFA and MCPA claims fail as a matter of law.

The DCFA prohibits certain acts, misrepresentations, or omissions "in connection with the sale, lease or advertisement of any merchandise." Del. Code Ann. tit. 6, § 2513(a).[5] Similarly, the

---

[5] Lincoln identifies no "advertisement" from Ford "to induce" his purchase. *See* Del. Code Ann. tit. 6, § 2511(1).

MCPA prohibits certain "unfair, abusive, or deceptive trade practice" in the "sale" or "offer for sale" of "consumer goods." *See* Md. Code Ann., Com. Law § 13-303(1), (2); *see also Morris v. Osmose Wood Preserving*, 667 A.2d 624, 635 (Md. 1995) (the alleged deceptive trade practice must occur in the sale or offer for sale to the consumer).

Lincoln purchased his used 2016 F-150 from Millsboro Auto-mart, who is not a Ford-authorized dealership. *See* FAC ¶ 18. While Lincoln alleges that Millsboro Auto-mart is a "part of" the "Preston Motor Group," which apparently owns or has ties to numerous new and used car dealerships, including Ford dealerships, Lincoln does not allege that Millsboro Auto-mart is *itself* a Ford-authorized dealership (it is not). *See* FAC ¶ 20, fn.2; *see* "About Us," https://www.millsboroautomart.com/about-us/ (last visited Feb. 28, 2020). Lincoln alleges no facts concerning Ford's involvement with or even Ford's knowledge of his purchase of the 2016 F-150 from Millsboro. Critically, Lincoln does not (because he cannot) allege any facts from which to infer that Ford made a "sale" or made an "offer for sale" or an "attempt to sell" the 2016 F-150 to Lincoln for "consideration." Del. Code Ann. tit. 6, § 2511(8) (defining a "sale" as "any sale, offer for sale or attempt to sell any merchandise for any consideration.") Thus, his DCFA claim is fatally infirm, requiring its dismissal with prejudice. *See Adams v. Gelman*, No. N15C–06–030, 2016 WL 373738, at *6 (Del. Super. Ct. Jan. 28, 2016), *aff'd*, 151 A.3d 449 (Del. 2016) (dismissing DCFA claim where there is no allegation that the defendant contacted any plaintiff for the purpose of selling, leasing or advertising any merchandise or services); *Willis v. City of Rehoboth Beach*, No. CIV.A.03C-11-016-RFS, 2005 WL 1953028, at *5 (Del. Super. Ct. June 24, 2005) (holding that a transaction in which there was no consideration exchanged between the parties was "not a sale nor a lease").

Twenty-two days after Lincoln purchased the 2016 F-150 from Millsboro, Millsboro reached out to Pittsville Ford who agreed to "service" Lincoln's 2016 F-150. FAC ¶ 20. The exact

details of the interaction or transaction among Millsboro, Pittsville Ford, and Preston Motor Group are not clear from the FAC, but ultimately, Pittsville Ford agreed to swap Lincoln's 2016 F-150 for a 2017 F-150 it had in its inventory and allowed Lincoln to "use[] the credit" of $19,836 from Millsboro for the 2017 F-150. *See id.* ¶¶ 23, 25, 26. These facts do not involve a "sale" by Ford. But even if the transaction was considered a "sale," Lincoln's MCPA claim nevertheless fails because he does not allege any facts from which to reasonably infer that Ford failed to state any "material fact" or knowingly concealed, suppressed, or omitted any material fact about the steering in the 2017 F-150 when Preston Motor Group permitted him to trade in the 2016 F-150 for a newer model year F-150. To the contrary, by the time Lincoln traded in 2016 F-150 for the 2017 F-150, he had experienced, and therefore, had actual knowledge regarding, the steering characteristics of an F-150. *See* FAC ¶¶ 18-24. Given these fatal defects, Lincoln's MCPA claim should also be dismissed with prejudice.

## III.   Plaintiffs' MCPA, DCFA, NMUTPA, and Fraudulent Concealment Claims Fail to Meet Fed. R. Civ. P. 9(b) and/or 8(a) Because They Do Not Adequately Plead Actionable Representations, Advertising, or Omissions

If the Court does not outright dismiss Buege's claims for lack of personal jurisdiction, *see* Section I; and Lincoln's claims under the MCPA and DCFA for failure to state viable causes of action, *see* Sections II, for the reasons described below, these claims, along with their fraudulent concealment claim, should nonetheless be dismissed based on Plaintiffs' failure to plead the claims pursuant to Rule 9(b) and Rule 8(a) of the Federal Rules of Civil Procedure.

### A.   Plaintiffs Fail to Plead Viable Claims under the MCPA, DCFA, or NMUTPA Based on Affirmative Representations or Advertising

Lincoln purports to assert MCPA and DCFA claims and Buege asserts a claim under New Mexico's Unfair Trade Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq.* ("NMUTPA") based on affirmative representations or advertising. *See* FAC ¶ 105 (asserting claims under Md. Code, Com.

Law §§ 13-301(1), (2)(i), (2)(iv), (5)(i), and (9)(i)); *id.* ¶ 111; *id.* ¶ 118. MCPA and DCFA claims premised on false or misleading representations must meet the heightened pleading standard of Fed. R. Civ. P. 9(b). *See Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013); *Eames v. Nationwide Mut. Ins. Co.*, 412 F. Supp. 2d 431, 438 (D. Del. 2006), *aff'd* 346 F. App'x 859, 861 (3d Cir. 2009). The requirement to plead a false or misleading "oral or written statement, visual description or other representation" is an essential element of a NMUTPA claim. N.M. Stat. Ann. § 57-12-2(D); *Stevenson v. Louis Dreyfus Corp.*, 811 P.2d 1308, 1311 (N.M. 1991).

Although Lincoln alleged in the original complaint that he "relied on the advertisements contained within the window sticker," he has been forced to concede that Ford was not responsible for any statement or omission on the window sticker on the two used vehicles he purchased. *See* Complaint ¶ 19; Motion, Doc. 6-1, at 7-8. As in the original complaint, in the FAC, Plaintiffs again do not identify any false or misleading statements about steering, requiring the dismissal of their MCPA, DCFA, and NMUTPA claims. *See, e.g.*, *Zieger v. Advance Am.*, No. CV 13-1614-GMS, 2014 WL 7388365, at *6 (D. Del. Dec. 29, 2014) (dismissing DCFA claim where the plaintiff did not identify a misrepresentation or omission, let alone with the level of particularity required by Rule 9(b)); *Spaulding*, 714 F.3d at 781 (holding that the district court was correct in dismissing MCPA claim under Rule 9(b) where the plaintiff failed to allege, among other things, the contents of any allegedly false or misleading letters); *Romero v. Hartford Cas. Ins. Co.*, No. 1:16-CV-1335-RB-LF, 2017 WL 8220447, at *9 (D.N.M. Aug. 3, 2017) (dismissing NMUTPA claim pursuant to Fed. R. Civ. P. 12(c) where the complaint was devoid of any specific allegations of false or misleading statements by the defendant at the time of contract).

While Plaintiffs do refer to statements currently on Ford's website about the Lane-Keeping System and Electronic Power Assisted Steering on 2020 model year vehicles, *see* FAC ¶ 53, they do not explain why the statements are false or whether these same representations were made for

the 2016, 2017 or 2018 model year F-150s at issue in this case. In any event, that and the one other statement they identify, are quintessential non-actionable puffery. *See* FAC ¶¶ 52, 53; *Begay v. Medicus Healthcare Sols., LLC*, No. CV 15-500 JCH/SCY, 2015 WL 13650107, at *6 (D.N.M. Nov. 18, 2015) (dismissing NMUTPA claims based on statements like "laser-focused on quality," "quality solutions," "accountability is key," and "high quality" because the statements were puffery); *Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 750 (E.D. Mich. 2017) (statement that Ram 1500 was "equipped with some of the most advanced safety and security technology available" was non-actionable puffery); *Sims v. Kia Motors Am., Inc.*, No. SACV131791AGDFMX, 2014 WL 12558249, at *7 (C.D. Cal. Mar. 31, 2014) (statements that vehicles were of "world-class quality," gave consumers "peace of mind," and were "engineered to help ensure everyone's well-being" were puffery). Plaintiffs also fail to specifically allege they reviewed these representations on Ford's website prior to purchasing their vehicles, and therefore, cannot claim they relied or were misled by them, in any event.

Accordingly, to the extent they are based on affirmative representations, Plaintiffs' MCPA (Count 1), DCFA (Count 2), and NMUTPA (Count 3) claims fail as inadequately pled.

**B.      Plaintiffs Do Not Plausibly Allege the Existence of the "Steering Defect" in Their Vehicles and Fail to Provide Fair Notice to Ford Regarding a Material Omission**

As discussed above, Lincoln and Buege fail to state viable claims under the MCPA, DCFA, and NMUTPA, either for lack of jurisdiction or because Ford was not involved in the "sale" of either of Lincoln's vehicles. If the Court concludes Plaintiffs' allegations surmount these claim-dispositive hurdles, Plaintiffs' omission-based claims under the MCPA, DCFA, and NMUTPA, and for common law fraudulent concealment, should be dismissed pursuant to Fed. R. Civ. P. 8(a) or 9(b).

Under Rule 8(a), a complaint must contain facts sufficient to "give fair notice of the claim

being asserted" to the adverse party, "sharpen the issues to be litigated," and "confine discovery and the presentation of evidence at trial within reasonable bounds." *Plumhoff v. Cent. Mortg. Co.*, 286 F. Supp. 3d 699, 701 (D. Md. 2017) (citations omitted). Here, the allegations regarding Plaintiffs' *own* experiences, the four bulletins they reference in their FAC, and the two YouTube videos and the NHTSA complaints incorporated by reference fail to provide fair notice to Ford regarding the existence, nature, or cause of the alleged "Steering Defect." At best, their FAC suggests the possibility of drivers inappropriately taking their hands off the steering wheel or a driveability issue immediately apparent upon driving the vehicle—but neither circumstance constitutes a "defect" that Ford was duty-bound to disclose.

Plaintiffs' entire case is premised on the existence of a "latent defect" in their F-150s that they claim Ford knowingly and intentionally concealed. *See, e.g.*, FAC ¶¶ 2, 85, 106, 113, 123, 160, 166. However, Plaintiffs' own allegations undermine any assertion of latency or concealment. For example, Lincoln admits he "noticed a problem with the steering *upon purchasing* the 2016 [F-150]." *Id.* ¶ 19 (emphasis added). Despite Lincoln's alleged experience with the steering in the 2016 F-150, he does not allege he test drove the 2017 F-150 before purchasing it. According to Lincoln, "[w]hen he drove the 2017 [F-150] with the sales agent, [he] noticed that it pulled and drifted in both directions," *id.* ¶ 27, just as he had experienced in the 2016 F-150. Buege likewise admits that "*[i]mmediately* after purchasing the 2018 [F-150], he noticed it would drift from side to side." *Id.* ¶ 35 (emphasis added). These facts do not support the existence of any "latent defect" at all. These admissions undermine essential elements of their claim—*i.e.*, that the alleged steering defect in F-150s was concealed or intended to conceal what was, according to Plaintiffs, "immediately" apparent upon driving the vehicle. *See, e.g.*, Del. Code Ann. tit. 6, § 2513(a) (prohibiting "the concealment, suppression, or omission of any material fact"); *Daniyan v. Viridian Energy LLC*, No. CIV.A. GLR-14-2715, 2015 WL 4031752, at *3 (D. Md. June 30, 2015)

14

(dismissing MCPA claim based on omissions because the allegedly material fact that the defendant's rates may be higher than the utility's rates was information explicitly stated on the defendant's website); *Vilar v. Equifax Info. Servs., LLC*, No. CIV 14-0226 JB/KBM, 2014 WL 7474082, at *27 (D.N.M. Dec. 17, 2014) (omitted information is material within the meaning of NMUTPA where: "(i) the plaintiff has no reasonable opportunity to ascertain it; and (ii) whether it would have induced a reasonable consumer in the plaintiff's shoes to enter into that contract"); *Fegeas v. Sherrill*, 147 A.2d 223, 225 (Md. 1958) (fraudulent concealment under Maryland law requires the concealment to have been "intentional and effective"); Restatement (Second) of Torts § 538 (1977); Restatement (Second) of Torts § 550 (1977).

Plaintiffs also claim four publicly-available service bulletins "suggest[]" the "cause" or the "fault" of their alleged "Steering Defect." *See* FAC ¶¶ 66-69. One of the bulletins is not specific to F-150s and is only informative in nature. *Id.* ¶ 68 (explaining the Lane-Keeping System in all vehicles equipped with the feature). Another bulletin Plaintiffs reference about the anti-lock brake systems (ABS) indicate that a diagnostic code may be exhibited in the ABS module, but contains no information from which one can infer, much less reasonably, that the diagnostic code is tied to the alleged "Steering Defect." *Id.* ¶ 69. While the other two bulletins describe repair or diagnosis procedures for a drift, pull, and/or wander condition, there is nothing remarkable about the bulletins, as any vehicle can experience drift or pull. *Id.* ¶¶ 66, 67. These bulletins reflect Ford's continuous efforts to address issues as they arise in the field to fulfill its warranty obligations. As Plaintiffs themselves admit, they do not know, and apparently have undertaken no effort prior to suing to understand, what these bulletins "mean" and do not allege that any Ford-authorized dealer determined their vehicles to have had a condition related to the bulletins, much less that they did so at the time of purchase. *Id.* ¶ 70.

Plaintiffs have also incorporated-by-reference two YouTube videos they claim

15

demonstrate the alleged defect in action. *See* FAC ¶ 49 & fn.3. These videos show two drivers who repeatedly take their hands off the steering wheel. For example, one of the drivers purports to demonstrate what happens to the steering wheel when he is "not holding," or when he has "no hands" on, the steering wheel. *See* Request for Judicial Notice ("RJN"), filed concurrently herewith, Ex. A (still-shots of Chris Peterson, 2016 F150 Steering Issue, YouTube (Mar. 21, 2017), https://www.youtube.com/watch?v=pKXzmg9OlCo). Similarly, the driver in the second video purports to show what happens to the steering wheel when "I let go of the steering wheel again." RJN, Ex. B (still-shots of 492Utube, NEW Ford F150 Steering Problem Oakridge Ford Won't Repair, YouTube (Oct. 20, 2016), https://www.youtube.com/watch?v=6I3KRqFlJv8).[6] Plaintiffs also excerpt two (out of a total of eight) complaints posted on NHTSA's websites regarding 2015-2019 F-150s evidencing drivers complaining about having to provide input to the steering wheel. *See, e.g.* FAC, at p. 15 (NHTSA ID No. 10724299: "REQUIRES RESISTANCE ON STEERING WHEEL TO KEEP STRAIGHT."), p. 16 (NHTSA ID No. 11084235: "THE STEERING WHEEL NEEDS CONSTANT INPUT FROM THE DRIVER IN ORDER TO DRIVE STRAIGHT").[7] Plaintiffs do not allege Ford promised a vehicle that could steer itself when the driver provides no input to the steering wheel. Indeed, on one of the webpages Plaintiffs reference in the FAC, Ford discloses "*Lane-Keeping System does not control steering" and that "Driver Assist Features are supplemental and do not replace the driver's attention, judgment and

---

[6] In Exhibits A and B to the Request for Judicial Notice, Ford has provided the Court with just a few of the still-shots of the segments from the two YouTube videos referenced in footnote 3 of the FAC, and a transcription of what the driver says in those segments. Ford can provide additional segments of the videos or transcriptions of the drivers' narratives upon the Court's request.

[7] The six other excerpted NHTSA complaints about the vehicles actually at issue in *this* action reflect a hodge-podge of issues that drivers have experienced including "WHEN TRYING TO COMPENSATE FOR WIND AND WEATHER," and do not plausibly suggest the existence of a common defect in all 2015-2019 F-150s. *See* FAC at pp. 15-17, 19-22.

need to control the vehicle." Lane-Keeping System,

https://www.ford.com/trucks/f150/features/smart/#lanekeeping. *See* FAC ¶ 53 & fn.5. When a

driver takes his hands off of the steering wheel the vehicle should not be expected to continue

driving itself. While Plaintiffs suggest that some drivers may expect otherwise, this is not a "latent

defect."

In sum, the allegations regarding Plaintiffs' own experience, at best, possibly demonstrate

a driveability issue that is "immediately" apparent driving and the remaining factual allegations

provide no fair notice to Ford as to what the purported "Steering Defect" may be other than the

possibility of drivers' own misuse of their vehicles by taking their hands off the steering wheel.

Accordingly, Plaintiffs have failed to plead viable omissions-based claims against Ford based on

the purported "Steering Defect." *See Callaghan v. BMW of N. Am., LLC*, No. 13-CV-04794-JD,

2014 WL 6629254, at *3 (N.D. Cal. Nov. 21, 2014) (dismissing complaint that alleged an

impermissibly vague "defect"); *DeCoteau v. FCA US LLC*, No. 15-cv-00020-MCE(EFB), 2015

WL 6951296, at *3 (E.D. Cal. Nov. 10, 2015) (noting that "the level of specificity required appears

to directly correlate to the complexity of the machinery in question").

## IV.    The Economic Loss Doctrine Bars Lincoln's Common Law Fraudulent Concealment Claim under Delaware Law

Lincoln's common law fraudulent concealment claim under Delaware law is further barred

by the economic loss doctrine because he seeks purely economic losses in this action. *See, e.g.*,

FAC ¶¶ 6, 7, 32, 44; *Lima Delta Co. v. Gulfstream Aerospace Corp.*, No. CV N14C-02-042 MMJ,

2019 WL 624589, at *1 (Del. Super. Ct. Feb. 13, 2019) ("Economic losses include monetary loss,

cost of repair or replacement, loss of business or employment opportunities, and diminution in

value.") Under Delaware law, "[t]here is no recovery in tort for purely economic loss caused by a

defective product." *Lima Delta*, 2019 WL 624589, at *1. Although Delaware law recognizes an

exception to the economic loss doctrine if the defendant fraudulently induced the making of a contract, Lincoln has not (and cannot) allege any facts to support a fraudulent inducement claim against Ford with respect to his purchase of the 2016 F-150 from Millsboro. *See Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 530 & n.10 (D. Del. 2012) (dismissing fraud claim under Delaware law where the plaintiff failed to sufficiently allege fraudulent inducement and the claim of fraud was implausible).

## V.  Lincoln's Claim for Breach of Good Faith and Fair Dealing under Delaware Law and Buege's Claim under New Mexico Law Fail[8]

"[T]he essence of the duty of good faith and fair dealing is that neither party will act to impair the right of the other to receive benefits which flow from their agreement or contractual relationship." *Woodard v. Fid. Nat. Title Ins. Co.*, No. CIV 06-1170 RB/WDS, 2008 WL 5737364, at *7 (D.N.M. Dec. 8, 2008).

To state a claim for breach of the implied covenant of good faith and fair dealing under Delaware law, a plaintiff must identify a specific implied contractual obligation, a breach of that obligation, and damages resulting from the breach. *Charlotte Broad., LLC v. Davis Broad. of Atlanta, L.L.C.*, No. N13C–04–143, 2015 WL 3863245, at *6 (Del. Super. Ct. June 10, 2015), *aff'd*, 134 A.3d 759 (Del. 2016). The burden is higher under New Mexico law, and "[t]he breach of [the] covenant requires a showing of bad faith or that one party wrongfully and intentionally used the contract to the detriment of the other party." *Sanders v. FedEx Ground Package Sys., Inc.*, 188 P.3d 1200, 1203 (N.M. 2008) (quoting *Cont'l Potash, Inc. v. Freeport-McMoran, Inc.*, 858 P.2d 66, 82 (N.M. 1993)). "Importantly, the implied covenant of good faith and fair dealing cannot be used to overcome or negate an express term contained within a contract." *Sanders*, 188 P.3d at

---

[8] Lincoln no longer pleads a claim for breach of the implied covenant of good faith and fair dealing under Maryland law.

1203; *NACCO Indus., Inc. v. Applica Inc.*, 997 A.2d 1, 20 (Del. Ch. 2009) ("[T]he implied covenant does not apply when 'the subject at issue is expressly covered by the contract.") (citing *Dave Greytak Enters., Inc. v. Mazda Motors of Am., Inc.,* 622 A.2d 14, 23 (Del. Ch. 1992)).

Here, Plaintiffs allege Ford had implied obligations under Delaware and New Mexico law to "notify[] consumers of the Steering safety Defect," "not sell[] or leas[e] such vehicles with the known safety Defect," "to repair the Defect in vehicles covered by express or implied warranty," and "to fully and adequately repair and replace defects related to vehicle safety." FAC ¶ 166. None of these are implied obligations that arise under any agreement or contract with Ford.

The obligation to repair defects under warranty are *express* obligations under the NVLW and therefore, cannot be the basis of a claim for an *implied* obligation. *Melnick v. State Farm Mut. Auto. Ins. Co.*, 749 P.2d 1105, 1110 (N.M. 1988) (holding that an implied covenant of good faith and fair dealing cannot override express provisions addressed by the terms of an integrated, written contract); *NACCO*, 997 A.2d at 20; *Wilmington Sav. Fund Soc'y, FSB v. PHL Variable Ins. Co.*, No. CV 13-499-RGA, 2014 WL 1389974, at *11 (D. Del. Apr. 9, 2014) (dismissing breach of the covenant of good faith and fair dealing claims that were simply the repackaged breach of contract claims).

Plaintiffs fail to allege what agreement or contracts give rise to any implied contractual obligation for Ford to "notify[] consumers of the Steering safety Defect" and "not sell[] or leas[e] such vehicles with the known safety Defect." These obligations, if any, arise under federal law. Thus, while Plaintiffs fail to identify any contract or agreement with Ford, there is simply no "gap" that must be filled with an implied obligation. *See Eagle v. Freeport-McMoran, Inc.*, No. 2:15-CV-00577-MV-SMV, 2016 WL 7494277, at *5 n.1 (D.N.M. May 26, 2016) (dismissing claim for breach of the implied covenant of good faith and fair dealing under New Mexico law where the plaintiff failed, *inter alia*, to allege any supporting factual allegations regarding the existence of a

contract giving rise to implied payment obligations); *Reklam v. Bellator Sport Worldwide LLC*, No. CV 16-285-JFB-SRF, 2017 WL 5172397, at *6–7 (D. Del. Nov. 8, 2017) (dismissing claim under Delaware law where the plaintiff failed to identify any specific implied contractual obligation that was breached or any gap in the parties' agreement that needed to be filled).

Because neither Lincoln nor Buege have pled sufficient facts of an implied obligation, and Buege fails to allege any facts regarding bad faith, their claims under Delaware and New Mexico law for breach of the implied covenant of good faith and fair dealing should be dismissed.

## VI.  Plaintiffs' Breach of Express Warranty Claims Fail

A warranty "related to the quality or description" of goods is distinguishable from a warranty that "promises ... [to] repair or replace defective parts during the warranty period." *See, e.g., Mydlach v. DaimlerChrysler Corp.*, 875 N.E.2d 1047, 1058 (Ill. 2007); *Ontario Hydro v. Zallea Sys., Inc.*, 569 F. Supp. 1261, 1266 (D. Del. 1983) ("[A] repair or replacement warranty merely provides a *remedy* if the product becomes defective."). Here, Plaintiffs fail to allege a claim for breach of express warranty-by-representation under Maryland, Delaware, and New Mexico law; and Lincoln fails to allege a breach of the written New Vehicle Limited Warranty ("NVLW") under Maryland and Delaware law.[9]

### A.  Breach of Warranty-by-Representation Claim Fails

An express-warranty may be created pursuant to Maryland, Delaware, and New Mexico law by a "seller" based on an "affirmation of fact or promise . . . which relates to the goods" or a "description of the goods" made part of the basis of the bargain. Md. Code, Com. Law § 2–

---

[9] If this case proceeds, discovery may reveal that Buege's claim for breach of the NVLW is also meritless. However, given Buege's allegations that the dealer informed him that the driver-side upper control arm was bent and causing the drifting on the steering and that Buege paid out-of-pocket for the recommended repairs although his vehicle was under warranty, *see* FAC ¶ 37, Ford does not move to dismiss Buege's claim for breach of the NVLW at this time.

313(1)(a), (b); Del. Code Ann. tit. 6, § 2-313(1)(a), (b); N.M. Stat. Ann. § 55-2-313(1)(a), (b). For reasons similar to those described in Section II, Plaintiffs' express warranty-by-representation claims fail because they do not allege any "affirmation of fact or promise" relating to their vehicle or a "description" made part of the basis of the bargain. *Stanley v. Cent. Garden & Pet Corp.*, 891 F. Supp. 2d 757, 765 (D. Md. 2012) (dismissing express-warranty claim where the plaintiff did not allege any specific statement of fact or promise that was false); *Freed v. St. Jude Med., Inc.*, 364 F. Supp. 3d 343, 354 (D. Del. 2019) (same); *Bellman v. NXP Semiconductors USA, Inc.*, 248 F. Supp. 3d 1081, 1153 (D.N.M. 2017) (holding that, where aside from perfunctorily alleging in the complaint that the defendant "expressly" warranted the chemicals that it supplied, the plaintiffs did not explain the warranty or even identify "the warranty's precise terms," the plaintiffs had not stated a "possibly viable" claim). Moreover, the referenced statements on Ford's website do not rise to the level of an express-warranty. *See* Del. Code Ann. tit. 6, § 2-313(2) ("an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty"); Md. Code, Com. Law § 2-313(2) (same); N.M. Stat. Ann. § 55-2-313(2) (same).

Lincoln's claim for breach of express-warranty under Maryland law also fails as a matter of law for lack of contractual privity. *H & M Co. v. Tech. Heat Transfer Servs., Inc.*, No. CIV.A. TDC-14-1518, 2015 WL 1472000, at *4 (D. Md. Mar. 30, 2015) (dismissing claim for breach of express warranty for lack of privity); *Copiers Typewriters Calculators, Inc. v. Toshiba Corp.*, 576 F. Supp. 312, 322–23 (D. Md. 1983) (privity is a required element for an express warranty claim under Maryland law when no personal injury is alleged); *see also Pulte Home Corp. v. Parex, Inc.*, 923 A.2d 971, 995 n.14 (Md. Ct. Spec. App. 2007), *aff'd*, 942 A.2d 722 (Md. 2008) (holding that Md. Code, Com. Law § 2–314(b) eliminated the requirement of privity only for claims of breach of implied warranty of merchantability and that Maryland does not recognize an exception to the

privity requirement for an express warranty claim when no personal injury is alleged).

### B.    Lincoln's Claim for Breach of NVLW Fails

Lincoln's claim for breach of the NVLW[10] likewise fails because he has not pled facts that Ford *refused* to pay for warranty repairs or that he paid any money out-of-pocket for repairs for his 2016 F-150 or 2017 F-150. With respect to the 2016 F-150, Lincoln does not allege he incurred any out-of-pocket expenses for the alignment or tire rebalancing performed by Millsboro Auto-mart. FAC ¶ 19. Although Lincoln alleges that Millsboro Auto-mart told him to take his vehicle to Pittsville Ford for servicing, Pittsville Ford could not verify Lincoln's concern and therefore, did not perform any repairs. *Id.* ¶ 20. With respect to the 2017 F-150, Lincoln admits Pittsville Ford performed a realignment for free. *Id.* ¶ 27. While the 2017 F-150 "was under warranty," Pittsville Ford adjusted the alignment, adjusted the steering gear assembly, and replaced the shaft seal, and Lincoln does not allege he paid for any of these repairs. *Id.* ¶ 28.

These allegations do not support a *breach* of warranty claim against Ford; rather, they demonstrate *performance* of warranty obligations. That Plaintiff vaguely claims "the problem persisted" in his 2017 F-150, *see id.* ¶¶ 27, 28, does not establish Ford's breach of the NVLW; the NVLW does not promise that a dealer's initial repair attempt will resolve every issue and that a follow-up service will never be necessary. *Cadena v. Am. Honda Motor Co., Inc.*, No. 18-CV-4007-MWF(PJWx), 2019 WL 3059931, at *9–10 (C.D. Cal. May 29, 2019) (dismissing claim for breach of repair or replacement warranty where the plaintiffs failed to allege the warrantor refused

---

[10] Copies of the 2016, 2017, and 2018 NVLWs are attached as Exhibits D, E, and F, respectively, to the concurrently-filed Request for Judicial Notice. Because the limited warranties are referenced in the FAC, *see* FAC ¶¶ 75-76, fn. 11, and Plaintiff's express warranty claims necessarily depend on their existence, *e.g.*, *id.* ¶¶ 28, 31, 37, 78, the Court may consider these documents on a Rule 12(b)(6) motion. *Baltimore Scrap Corp. v. Exec. Risk Specialty Ins. Co.*, 388 F. Supp. 3d 574, 585 (D. Md. 2019).

warranty repairs); *Burton v. Chrysler Grp. LLC*, No. CV 12-5-LPS, 2014 WL 4253135, at *5 (D. Del. Aug. 27, 2014) (dismissing claim for breach of repair warranty where the complaint was devoid of allegations that plaintiff sought the promised repair or replacement and not received it, or received it but was charged, or sought reimbursement for an earlier repair or replacement and been denied); *Darne v. Ford Motor Co.*, No. 13 C 03594, 2015 WL 9259455, at *7 (N.D. Ill. Dec. 18, 2015) (dismissing claims for breach of repair warranty where allegations demonstrated Ford's performance of warranty obligations each time vehicle was presented for repair during warranty period); *Bros. v. Hewlett-Packard Co.*, No. 06-02254, 2006 WL 3093685, at *7 (N.D. Cal. Oct. 31, 2006) (dismissing express-warranty claim where manufacturer had repaired product but it later failed after the warranty expired); *Cadena*, 2019 WL 3059931, at *10 (holding that allegations that the issues persisted after only one or two repair attempts were insufficient to constitute a breach of the New Vehicle Limited Warranty because the warranty did not guarantee defects will be cured in one visit). Here, Lincoln does not allege that he informed Pittsville Ford (or Ford directly) that problems persisted after the repairs; so Lincoln has effectively deprived Ford of an opportunity to satisfy its warranty obligations.

Simply put, Lincoln's express warranty claims fail because his own allegations establish Ford did not breach any express warranty.

## VII.    Plaintiff's Claims for Breach of the Implied Warranty of Merchantability under Maryland, Delaware, and New Mexico Law are Barred Based on their Failure to Provide Notice within a Reasonable Time

Pre-suit notification to the seller for a breach of the implied warranty of merchantability is a prerequisite to bringing suit under Maryland, Delaware, and New Mexico law. Md. Code Ann., Com. Law § 2–607(3)(a) ("The buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."); Del. Code Ann. tit. 6, § 2-607(3)(a) (similar); N.M. Stat. Ann. § 55-2-607(3)(a); *Firestone Tire & Rubber*

*Co. v. Cannon*, 452 A.2d 192, 198 (Md. Ct. Spec. App. 1982), *aff'd*, 456 A.2d 930 (Md. 1983) (under Maryland law, notice to the immediate seller constitutes sufficient notice to manufacturer); *F.E. Myers Co. a Div. of McNeil Corp. v. Pipe Maint. Servs., Inc.*, 599 F. Supp. 697, 703 (D. Del. 1984) (specifying that "notice to seller of injury" is an element of a cause of action for breach of the implied warranty merchantability under Delaware law); *Willis v. Smith*, No. 16 CV 167 JAP/LF, 2016 WL 9281447, at *7 (D.N.M. Dec. 14, 2016) (dismissing implied-warranty claim under New Mexico law because the plaintiffs failed to give the defendants notice of breach within a reasonable time after discovering the alleged breach).

This requirement is satisfied when the buyer informs the seller of the buyer's particular claim of breach, the particular goods that have been impaired, and set forth the nature of the nonconformity. *See Lynx, Inc.*, 327 A.2d at 513; *Lloyd v. Gen. Motors Corp.*, 575 F. Supp. 2d 714, 723 (D. Md. 2008) (holding that the "notice of the breach required is not of the facts, . . . but of the buyer's claim that they constitute a breach.'") (citation omitted); *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 542 (D. Md. 2011) (dismissing implied-warranty claim where the plaintiff did not allege that he informed the seller that there was a breach, let alone the particular component that was impaired and the nature of the nonconformity); *Theis*, 2013 WL 1632677, at *1 (dismissing claim for breach of the implied warranty of merchantability where the plaintiff failed to plead he gave the defendant any notice of the alleged breach).

Here, neither of the Plaintiffs allege they provided Ford with pre-suit notice of the alleged breach of the implied-warranty with respect to their F-150s. FAC ¶¶ 17-44. While Buege alleges that he once "complained to Ford's corporate office directly," he alleges it was only about "the cost of repairs not being covered under warranty." *Id.* ¶ 39.

The Supreme Courts of Delaware, Maryland, and New Mexico have not yet decided whether the filing of a civil complaint satisfies the "reasonable notice" requirement. But "notice

by complaint is the unusual exception, not the rule." *In re: Elk Cross Timbers Decking Mktg.*, No. 2577, 2015 WL 6467730, at *30 (D.N.J. Oct. 26, 2015). Given that the purpose of the reasonable notification requirement is to "open[] the way for normal settlement through negotiation," *see* U.C.C. § 2-607 cmt. 4, Ford submits that the filing of a lawsuit is not sufficient notice under the Uniform Commercial Code. *See, e.g.*, *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011) (sending of notice letter simultaneously with the complaint failed to meet the reasonable notice requirement under Cal. Comm. Code § 2607(3)(A) because it "completely undermined" the purpose of the requirement); *Hebron v. Am. Isuzu Motors, Inc.*, 60 F.3d 1095, 1098 (4th Cir. 1995) (service of complaint two years after accident and after the truck had been disposed was unreasonable as a matter of law where no explanation for the delay was provided and the manufacturer was deprived of opportunity to inspect the vehicle).[11]

As courts in Maryland, Delaware, and New Mexico have held, Plaintiffs' implied-warranty claims are defective because they fail to plead that they provided reasonable notice of the alleged breach to Ford, and as such, their claims should be dismissed. *See, e.g.*, *Lynx, Inc. v. Ordnance Prods., Inc.*, 327 A.2d 502, 514 (Md. Ct. App. 1974) ("Since the existence of a right of action is conditioned upon whether notification has been given the seller by the buyer, where no notice has been given prior to the institution of the action an essential condition precedent to the right to bring the action does not exist and the buyer-plaintiff has lost the right of his remedy."); *Theis v. Viewsonic Corp.*, No. CIV.A. 12-1569-RGA, 2013 WL 1632677, at *1 (D. Del. Apr. 16, 2013)

---

[11] While Delaware law allows notice to be provided to the immediate seller, that exception is inapplicable here because Lincoln does not allege that Millsboro (unaffiliated with Ford) provided notice to Ford of the breach. See Cannon, 452 A.2d at 196 (explaining that the rationale for the rule that notice to the immediate seller constitutes sufficient notice to manufacturer is the expectation that notice will be provided "upstream until the seminal point of the distributive chain is reached").

(that the defendant had knowledge of the alleged defect due to complaints by other consumers and on the Internet was not sufficient notice of the alleged breach of the implied warranty and the plaintiff's *own* injury); *Willis*, 2016 WL 9281447, at *7 (holding that waiting three years after the plaintiff had knowledge of the alleged breach to notify the defendant was unreasonable notice as a matter of law); *cf. Badilla v. Wal-Mart Stores E., Inc.*, 389 P.3d 1050, 1054–55 (N.M. Ct. App. 2016) (granting summary judgment in favor of the defendant and holding that the passage of three years and two months between the accident and the plaintiff's providing notice to defendants was unreasonable).

## VIII.  Lincoln's Derivative Claim under the Magnuson-Moss Warranty Act Fails

The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, authorizes civil actions by consumers to enforce the terms of an express warranty under state law. *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 291 (4th Cir. 1989) ("[A]s to both implied and written warranties, Congress intended the application of state law, except as expressly modified by Magnuson–Moss, in ... breach of warranty actions.") (citing *Walsh v. Ford Motor Co.,* 807 F.2d 1000, 1013–14 (D.C. Cir. 1986); *Abraham v. Volkswagen of America, Inc.,* 795 F.2d 238, 247–49 (2d Cir. 1986)); *Laing v. Volkswagen of Am., Inc.*, 949 A.2d 26, 37 (Md. Ct. Spec. App. 2008) ("[A]ctions for breach of limited or implied warranties [under Magnuson-Moss] are governed by state laws."); *McLaren v. Mercedes Benz USA, LLC*, No. CIV.A. 04C-04-019PLA, 2006 WL 1515834, at *4 (Del. Super. Ct. Mar. 16, 2006) ("[Q]uestion of what constitutes damages under the [Magnuson-Moss] Act requires reference to state warranty law.") (citing *Walsh v. Ford Motor Co.,* 807 F.2d 1000, 1012 (D.C.Cir.1986)).

It requires the application of state warranty laws; it does not create additional federal law protections or expand a plaintiff's rights under state warranty law. *Granillo v. FCA US LLC*, No. CV 16-153 (FLW)(DEA), 2016 WL 9405772, at *16 (D.N.J. Aug. 29, 2016) ("[A] plaintiff cannot

bring an MMWA claim without an underlying state law claim."); *Pack v. Thor Motor Coach*, No. CV 19-503, 2019 WL 1755717, at *4 (E.D. Pa. Apr. 19, 2019) (the Magnuson-Moss Act "does not create an independent cause of action from the underlying breach.") (citation omitted).

Because Lincoln has not alleged viable claims for breach of express- or implied-warranty under state law, his derivative Magnuson-Moss claim necessarily fails as a matter of law. *See Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 254 (3d Cir. 2010) (dismissal of Magnuson-Moss claim was proper where the plaintiff failed to state any viable underlying state claims); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (the disposition of the state law warranty claims determines the deposition of the Magnuson-Moss Act claims).

## CONCLUSION

For the reasons described above, and as may be supplemented in Ford's reply brief or at any hearing scheduled by the Court, Plaintiffs' FAC should be dismissed in its entirety.

Dated: February 28, 2020                    Respectfully submitted,

                                            By: */s/ Michael L. Mallow*

                                            Michael L. Mallow, Bar No. 21192
                                            Darlene M. Cho, admitted *Pro Hac Vice*
                                            **SHOOK, HARDY & BACON LLP**
                                            2049 Century Park East
                                            Suite 3000
                                            Los Angeles, CA 90067
                                            Tel: (424) 285-8330
                                            Fax: (424) 204-9093
                                            mmallow@shb.com

                                            Michelle Noorani, Bar No.: 26438
                                            Harry S. Johnson, Bar No.: 00618
                                            **WHITEFORD TAYLOR & PRESTON LLP**
                                            7 St. Paul Street
                                            Baltimore, MD 21202
                                            Tel: (410) 347-9479
                                            Fax: (410) 234-2352
                                            mnoorani@wtplaw.com
                                            hjohnson@wtplaw.com

*Attorneys for Defendant Ford Motor Company*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 28th day of February, 2020, a copy of MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT FORD MOTOR COMPANY'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(2) AND 12(b)(6) were filed and served electronically, via CM/ECF, on the following Plaintiff's counsel:

James Ulwick, Esq.
Kramon & Graham, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
Tel: (410) 752-6030
julwick@kg-law.com

Nyran Rose Rasche
Brian P. O'Connell
CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP
150 S. Wacker, Suite 3000
Chicago, Illinois 60606
Tel: 312-782 4880
nrasche@caffertyclobes.com
boconnell@caffertyclobes.com

Bryan L. Clobes
205 N. Monroe St.
Media, PA 19063
Tel: (215) 864-2800
bclobes@caffertyclobes.com

_/s/ Michael L. Mallow_
_____

Michael L. Mallow, Bar No. 21192
**SHOOK, HARDY & BACON LLP**
2049 Century Park East
Suite 3000
Los Angeles, CA 90067
Tel: (424) 285-8330
Fax: (424) 204-9093
mmallow@shb.com

4845-8293-5220